IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

HEREVEL BEN-KUSHI, a/k/a ) 
KEITH WALKER, )
                    ) Civil No. 4:03-cv-40038-JEG-RAW
      Plaintiff, )
                    )
vs. )
                    )
IOWA D.O.C. DIRECTOR WALTER L.) REPORT AND RECOMMENDATION
KAUTZKY, LARRY BRIMEYER, ) ON REMAND
JOHN MATHES, WILLIAM )
SPERFSLAGE, JOHN EMMETT, )
RONALD WELDER, KAREN WOODLEY, )
DAVE DEGRANGE, PAUL MULLER, )
BERNARD EAVES, DEBBIE NICHOLS,)
and DELWIN VANDE KROL, )
                    )
      Defendants. )

In 2003 plaintiff Keith Walker sued officials at the Iowa State Penitentiary ("ISP") where he is incarcerated. He alleged prison officials had not accommodated his Hebrew Israelite religious beliefs in violation of his Free Exercise rights under the First Amendment to the U.S. Constitution and as codified in the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-1, *et seq*.[1] Walker sought damages and equitable relief. In a July 8, 2005 Report and Recommendation [46] the undersigned recommended that limited injunctive and declaratory relief be entered in Walker's favor. No objections were made and on December 20, 2005 District Judge James E. Gritzner adopted the Report and Recommendation [54] and the recommended judgment was entered.

---

[1] All First Amendment issues have been resolved. The issue on remand concerns only Walker's statutory religious exercise rights under RLUIPA.

Among other things Walker had requested that he be provided with a kosher diet. The Court found Walker established that the lack of a kosher meal option on what he described as Hebrew Israelite holy days substantially burdened the exercise of his sincerely-held religious beliefs and that the burden was not justified by a compelling governmental interest thus violating his rights under RLUIPA. (Report and Recommendation [46] at 37, 49). A declaratory judgment was entered in his favor on the point. However, the Court also found Walker had not established that the lack of a daily kosher meal option substantially burdened his religious beliefs. His complaint was dismissed on this particular.

Walker appealed. In a *per curiam* opinion issued August 27, 2008 the Eight Circuit affirmed on all issues except the daily kosher meal option. *Walker v. Iowa Dept. of Corrections*, 298 Fed. Appx. 535, 536-37 (8th Cir. 2008). On this the court held and remanded with instructions as follows:

> As to Walker's request for daily kosher meals, the magistrate judge noted that Walker had more consistently pursued his claim for kosher meals on holy days, and thus determined that he had not shown that the lack of daily kosher meals substantially burdened the exercise of his beliefs. We conclude, however, that Walker sufficiently pursued a claim for daily kosher meals through his grievances, complaint, and hearing testimony, and we see no basis in the record for distinguishing between his need for daily kosher meals and his need for kosher meals on holy days. . . . Because the district court did not address whether ISP's denial of *any* daily kosher meal option is the least restrictive means to further a compelling

2

> governmental interest, *see* 42 U.S.C. § 2000cc-
> 1(a), we remand to the district court to
> consider this issue in the first instance.

*Id.* at 536-7 (emphasis original, case citations omitted).[2] The case was remanded for proceedings consistent with the Eighth Circuit's opinion. (Appellate Judgment [111-1]).

On remand the matter was again referred to the undersigned for report and recommendation. The parties entered into protracted discussions in an effort to resolve the dietary issues raised by Walker.[3] These efforts ultimately proved unavailing. Following conference with counsel an evidentiary hearing was set to develop the record on the remanded issue. (*See* Remand Tr. at 4). A hearing was held on December 7, 2009 by means of the Iowa Communications Network ("ICN") between the Des Moines Courthouse and the ICN room at ISP. The parties submitted post-hearing briefs. The matter is fully submitted.

---

[2] The Eighth Circuit affirmed this Court's finding that the defendants were entitled to qualified immunity from Walker's claim for damages. 298 Fed. Appx. at 537. Thus, the remanded daily kosher meal option issue survives only with respect to Walker's claims for equitable relief. To the Court's knowledge, most, perhaps all, of the originally-named defendants have moved on and no longer have any connection with ISP. By rule, Walker's claims for equitable relief continue against defendants' successors who are deemed to be automatically substituted even though not named. Fed. R. Civ. P. 25(d); *see* Note to 1961 Amendment to Subdivision (d)(1) of Rule 25.

[3] *See* January 15, 2009 Status Report [119], plaintiff's March 30, 2009 Motion to Continuance [121], and April 30, 2009 Status Report [123].

# I.

## ADDITIONAL FINDINGS

Mr. Walker is a sincere adherent to the Hebrew Israelite religion. Hebrew Israelites have dietary restrictions similar, though not identical, to Orthodox Judaism. In a nutshell they cannot eat pork, certain kinds of fish, and the flesh of some other animals not often found in a prison diet. (*See* Report and Recommendation [46] at 32). Hebrew Israelites should not eat food which has been in contact with prohibited animal products, or food which has been in contact with containers, pots, pans and kitchen utensils which have been used with prohibited animal products. (*See id.* at 32; Remand Tr. at 8-10). For this reason, Walker cannot eat the bread baked in the prison kitchen. (Remand Tr. at 29). "Hebrew Israelite beliefs do not mandate a kosher diet *per se* . . . "[a] practicing Hebrew Israelite is drawn to foods certified as kosher by Jewish rabbinical authority because consuming kosher food is a way to be reasonably assured no prohibited foods have been used in its preparation." (Report and Recommendation [46] at 35)(emphasis original)). But not all kosher-certified foods are suitable. Walker testified Hebrew Israelites will not consume foods with ingredients such as aspartame, saccharin, and MSG which might be found in kosher-certified foods. (Remand Tr. at 15).

To remain "clean" many Hebrew Israelites eat a vegetarian diet. (Remand Tr. at 14). Walker testified he has requested, and

4

would be satisfied with, an "Edenic" diet consisting mainly of fresh fruits, raw vegetables, nuts and raisins.[4] (*Id.* at 10, 14). In addition, the prison often has on hand prepared kosher-certified foods which Walker has eaten and would do so in the future: cereal and cereal bars (most of which are kosher); bagels, and granola. (*Id.* at 30, 104, 106).

Food at ISP is prepared and served by inmates under staff supervision. To avoid contamination Walker requests that his food be provided to him in a styrofoam tray and that the inmates who handle his food wear gloves while preparing the tray. (Remand Tr. at 29-30, 44, 49). Walker also suggested a microwave oven dedicated to kosher cooking could be kept in the chapel so he and like-minded inmates could cook some of the food items. (*Id.* at 46-47).

After the Court's initial ruling and while appeal was pending, Walker for a brief period received "kosher sacks" on holy days which contained two fresh fruit, two fresh vegetables, either

---

[4] The origin and nature of an "Edenic" diet was not addressed in the remand record beyond Walker's description of what it entails. Some authorities indicate, as the name implies, that it is connected with the Biblical story of the Garden of Eden. Apparently an Edenic diet is a vegan-based diet of natural and unprocessed foods -- vegetables, fruits, grains, nuts and seeds -- which Adam and Eve might have found in the Garden of Eden. *See* d i e t c h o i c e s . c o m / d i e t - p l a n s / e d e n i c - d i e t / ; www.dietsinreview.com/diets/edenic-diet/. As natural non-processed foods they are by nature kosher. A number of cases have observed that Hebrew Israelite adherents follow a vegan diet. *See Mays v. Springborn,* 575 F.3d 643, 646 (7th Cir. 2009); *Whitfield v. Illinois Dept. of Corr.*, 237 Fed. Appx. 93 (7th Cir. 2007); *Uhuru v. Moskowitz*, 2009 WL 2020758, at *12 (C.D. Cal. 2009).

two bowls of cereal or a cereal bar, and a styrofoam bowl of dried milk, all kosher. (Remand Tr. at 11, 17-18, 104). He was allowed to purchase other items from an outside vendor on holy days. (*Id.* at 17). As the Court understands Walker's testimony, he is no longer allowed to possess specially-ordered food items for holy days though he may purchase kosher food to be kept and consumed in the chapel on holy days. (*Id.* at 19, 108-09). As Walker can only go to the chapel once a day this restriction limits his ability to consume kosher food on holy days. Currently ISP does not make any effort to provide Walker with kosher food at all, either on holy days or a daily basis.

Joni Wells is the Administrator of Diet and Nutrition for the Iowa Department of Corrections ("IDOC"). She oversees the planning of special diets and the master menu for nine institutions at which the IDOC feeds approximately 8,500 inmates and staff. (Remand Tr. at 55-56). She testified IDOC has a five-week rotating menu cycle served on the same day at all institutions. (*Id.* at 56). Most of the food served on the master menu is purchased in bulk quantities from a centralized warehouse operated by the Department of Human Services ("DHS"). (*Id.*) IDOC has no control over what specific brands or types of foods get ordered and shipped to the institutions, therefore, brands may vary from shipment to shipment. (*Id.* at 57).

IDOC accommodates specialty diets of various description, primarily as medically ordered: two calorie-controlled, clear liquid, full liquid, dental soft, gluten-restricted, and low fiber/low residue. (Remand Tr. at 58). In planning the specialty diets, Wells works with the master menu and tries to use food items that coincide with what is on the menu. (*Id.*) Because inmates are the primary food preparers in the institutional kitchens, she tries to keep the diets simple. (*Id.* at 59). IDOC offers a meatless alternative available at every lunch and supper -- usually beans -- to satisfy the dietary restrictions of Muslims and vegetarians. IDOC does not offer a kosher diet plan. (*Id.* at 79). The daily food budget for each inmate is a little over $6.00. (*Id.* at 61).

ISP also provides sack "lunches" or "between meal snacks" to inmates when medically ordered as a nutritional supplement. (Remand Tr. at 62). There are three standard daily snacks: the A-M snack -- one cereal bar; the P-M snack -- cheese and crackers; and the H-S snack -- a peanut butter sandwich and a piece of fresh fruit. (*Id.*)

Part of Ms. Wells' duties is to ensure the food available to IDOC inmates meets nutritional requirements set by national standards. (Remand Tr. at 58-59). She testified the Edenic diet requested by Walker would not be good for him nutritionally. (*Id.* at 65). The caloric content would be low; the diet would be deficient in vitamins and minerals and without starches. Over the long term he could develop serious diseases. (*Id.* at 66).

7

Christopher Tripp is the Food Service Director at ISP. (12/7/2009 Tr. at 82). He oversees the dietary department. The kitchen feeds 1,400 individuals daily: approximately 1,150 inmate meals, meals at the Lee County jail and the juvenile facility, and staff meals. (*Id.* at 83). All facilities receive the same meals. (*Id.*)

The ISP kitchen staff includes two to three staff members and approximately 60 inmate/food workers: 35 on the morning shift and 25 to 30 on the afternoon shift. (Remand Tr. at 84-85). Food service staff fulfill primarily supervisory roles: they oversee the production of meals, assembly of trays and supervise the main line, dishwashing and food preparations. (*Id.* at 85). As noted, the work of preparing and serving the meals is performed by inmates. (*Id.*)

Tripp testified that for a time the kitchen provided Walker with raw vegetables and fruit on a list of holy days provided by Walker. He is not now being provided with sacks of food because he has been allowed to purchase food on holy days from an outside vendor. (Remand Tr. at 87-88, 96). According to Tripp, one of the problems in meeting Walker's holy day food requests was that he wanted  brand-specific items which IDOC did not have in stock. (*Id.* at 89). Currently Walker is "offered an opportunity to come through the meal line and choose . . . [b]ut nothing other than that . . . ." (*Id.* at 96).

Tripp testified the ISP kitchen has fresh fruit and raw vegetables in stock, the latter mainly carrots and celery which are always on hand. (Remand Tr. at 91-92). At the time of the remand hearing ISP did not have nuts in stock but there is no evidence providing nuts (or for that matter raisins) to Walker would pose any particular difficulty. Presumably styrofoam trays or containers are available. Work rules require inmates serving food to wear plastic gloves. Tripp said that inmate workers could be instructed to put on new gloves when they retrieve Walker's food from the cooler. (*Id.* at 96). Not surprisingly, inmate kitchen workers do not always follow the rules but when they do not, corrective action is taken. (*Id.* at 98).

## II.

### DISCUSSION

A.  Scope of Remand

RLUIPA applies a strict scrutiny standard to the review of prison regulations which substantially burden an inmate's exercise of his religious beliefs. It provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person --
>
> > (1)  is in furtherance of a compelling governmental interest; and
> >
> > (2)  is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The inmate must show, "as a threshold matter, that there is a substantial burden on his ability to exercise his religion." *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir.), *cert. denied*, 543 U.S. 991 (2004)(citing 42 U.S.C. § 2000cc-2(b)); *see Van Wyhe v. Reisch*, 581 F.3d 639, 649 (8th Cir. 2009); *cert. denied sub nom Reisch v. Sisney*, 130 S. Ct. 3323 (2010); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). There can be no substantial burden unless the inmate's asserted beliefs are both religious in nature and sincerely held. *See Patel*, 515 F.3d at 813 n.7; *Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000)("First Amendment protection only attaches to beliefs rooted in religion as opposed to purely secular beliefs or personal preferences.").

In its original ruling this Court expressly found that "[t]he Hebrew Israelite belief system as practiced by Walker is religious in nature" and he was "sincere in his asserted Hebrew Israelite beliefs." (Report and Recommendation [46] at 23). The Court went on to find that the lack of a kosher meal option on Hebrew Israelite holy days substantially burdened the exercise of Walker's religious beliefs, but that he had not established the failure to offer a daily kosher meal option substantially burdened the exercise of his religious beliefs. (*Id.* at 37). On appeal, the Eighth Circuit reversed the finding that Walker had not shown the lack of daily kosher meal option substantially burdened the

exercise of his beliefs, stating it saw "no basis in the record for distinguishing between [Walker's] need for daily kosher meals and his need for kosher meals on holy days." 298 Fed. Appx. at 537. The court of appeals then remanded the case solely for the purpose of addressing the last two elements of the RLUIPA analysis with respect to daily kosher meals -- whether defendants have demonstrated that the denial of any daily kosher meal option is the least restrictive means to further a compelling governmental interest. *Id.* (citing 42 U.S.C. § 2000cc-1(a)). The Eighth Circuit thus implicitly, if not explicitly, held Walker had shown the lack of any daily kosher meal option substantially burdened his religious exercise.[5]

In their post-trial briefs, defendants urge the Court to reexamine the sincerity of Walker's religious beliefs with respect to his dietary requests and whether in denying him any daily kosher meal option they have substantially burdened his religious beliefs. The Court cannot reexamine these issues because they have been determined through appeal and are now the law of the case. The Eighth Circuit has recently revisited the law of the case doctrine and its cousin, the mandate rule.

---

[5] The analysis under RLUIPA does not get to the strict scrutiny elements of compelling governmental interest and least restrictive means unless the institutionalized person establishes the *prima facie* element of substantial burden on the person's exercise of religion. Once the *prima facie* case is made, the burden of persuasion rests with the government entity. *See Van Wyhe*, 581 F.3d at 649 (citing 42 U.S.C. § 2000cc-2(b)).

> "'Law of the case terminology is often employed to express the principle that inferior tribunals are bound to honor the mandate of superior courts within a single judicial system.'" *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995)[additional citations omitted]. . . . "When an appellate court remands a case to the district court, all issues decided by the appellate court become the law of the case, and the district court on remand must 'adhere to any limitations imposed on its function . . . by the appellate court.'" *Id.* (quoting *United States v. Cornelius*, 968 F.2d 703, 705 (8th Cir. 1992)).

*United States v. Castellanos*, 608 F.3d 1010, 1016 (8th Cir. 2010). The issues of sincerity and substantial burden have as the result of Walker's appeal been decided in his favor. This Court cannot reexamine them on remand. The case has been remanded only for the Court to consider the issue of "whether ISP's denial of *any* daily kosher meal option is the least restrictive means to further a compelling governmental interest. . . ." 298 Fed. Appx. at 537 (emphasis original). The Court must adhere to this limitation.[6]

───────────────

[6] Defendants say the Court should re-examine the sincerity of Walker's claim for a daily diet which meets his asserted religious needs because the entire focus of the case is on his demands for certain foods. (Def. Post-Trial Brief [145] at 6-7). The remand proceedings focused on food because that is the only issue left. Walker originally sought other relief including access to the chapel to attend Jewish services and to study, the ability to possess certain religious items, and damages, now all resolved. In the remand proceedings Walker was more specific about the kosher food items he seeks and how they should be handled but his testimony did not represent such a departure from the original hearing record so as to justify reopening the *prima facie* case even were the Court able to do so.

B.   Compelling Governmental Interest/Least Restrictive Means

          Defendants have not been clear about the compelling governmental interests they contend are implicated by Walker's dietary requests, but their post-trial brief and the testimony of Ms. Wells and Mr. Tripp reveal three possible candidates: (1) controlling costs and efficient prison administration;[7] (2) maintaining prison security and order; and (3) providing a nutritionally adequate diet to inmates. The last two are unquestionably compelling governmental interests. *See Fowler v. Crawford*, 534 F.3d 931, 939 (8th Cir. 2008), *cert. denied*, 129 S. Ct. (2009)("A prison's interest in order and security is always compelling," citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)("prisoners have a right to nutritionally adequate food"). Some might quarrel with controlling costs and efficient prison administration as compelling governmental interests, but "consideration of costs and limited resources" is a relevant concern in applying the RLUIPA standard. *Cutter*, 544 U.S. at 723 (quoting Joint Statement of Sen. Hatch and Sen. Kennedy on RLUIPA appearing at 146 Cong. Rec. 16698, 16699 (2000); *see Baranowski v. Hart*, 486 F.3d 112, 125-26 (5th Cir.), *cert. denied*, 552 U.S. 1062 (2007)(recognizing controlling costs as a compelling governmental interest).

---

      [7] In the original proceeding cost was the only "arguable" compelling governmental interest put forward by defendants for denying kosher food to Walker. (Report and Recommendation [46] at 38).

There is no claim the kosher diet Walker requests would be costly. A daily diet of fruit, raw vegetables, nuts, raisins, cereal and cereal bars, and an occasional kosher bagel could not be very expensive, indeed very possibly less than the $6 a day the prison allots to feed each inmate. Many of these items are routinely stocked at ISP. In fact defendants have said "Walker can be provided a kosher diet as he request[s] from items found in the prison (without additional cooking considerations)." (Def. Post-Trial Brief [135] at 20). In his testimony Walker did not request that he daily be provided with frozen "TV-style" kosher dinners or other specially ordered expensive foods. He does not demand that the prison install or operate a kosher kitchen.

The Court can understand that when meal preparation and serving are left to inmate workers, simplicity and uniformity are desirable. Nonetheless, with hundreds of inmates solely dependent on the institution for their food inevitably different dietary needs and restrictions must be accommodated. ISP makes a number of kinds of special, medically-prescribed diets available to inmates who need them. It offers a vegetarian option for those who cannot, or do not want to, eat meat. For a time, on holy days, ISP provided Walker with the kosher food items he requested. Defendants have not shown that making the simple foods Walker requests available on a daily basis would have any significant impact on the operations of ISP's dietary department.

14

To remain kosher Walker's food cannot be contaminated by contact with forbidden "unclean" animals (in the prison environment mainly pork), or things that have been in contact with such animals. (*See* Remand Tr. at 10). To prevent contamination Walker asks that inmates handling his food wear plastic gloves, that the food be given to him on a styrofoam tray, and that the inmate kitchen workers be appropriately instructed. Defendants have not demonstrated there would be much administrative inconvenience in this. Inmate kitchen workers already are required to wear gloves. Styrofoam trays or containers are undoubtedly available. They are a fixture in any food service operation. Mr. Tripp testified his kitchen workers could be instructed on how to handle Walker's food. The instructions would be simple and not difficult to follow. There is of course no way to guarantee that the instructions would always be followed, they probably would not be, but that is one of the vagaries of prison life Walker will have to endure.

In some circumstances providing a specially requested diet to an inmate might affect prison security and order in two related ways. Other inmates may be jealous, breeding resentment, and the prison may be faced with "me too" requests from other inmates or religious groups. *See Baranowski*, 486 F.3d at 125; *Love*, 216 F.3d at 691; *Muhammad v. Crosby*, 2009 WL 2913412, at *10 (N.D. Fla. 2009). However, as with the weekend peanut butter sandwiches at issue in *Love*, it seems unlikely that other inmates would be

envious of the Edenic, vegetarian diet Walker requests, or that the prison would be faced with a "flood gate of similar requests from other inmates." 216 F.3d at 691. Defendants have produced no evidence that either of these things is reasonably likely to occur, in fact they do not directly argue the point. To most Walker's diet would seem monotonous and unappetizing. If other prisoners did want to similarly restrict their diet, they could obtain most of the same food items from the regularly-available kitchen offerings. If other prisoners claimed a religious basis that their food be kept kosher they would, as Walker has had to do, have to establish a substantial burden on their sincerely held religious beliefs as opposed to a mere personal preference. *Id. See Cutter*, 544 U.S. at 721 n.9.

The diet Walker requests is not a nutritionally good one and unvaried over the long term, could lead to serious disease. Prison officials must offer a nutritionally sufficient diet, but they cannot control what among the offerings prisoners actually eat. Defendants have it right when they say the decision whether to eat a nutritionally adequate diet is ultimately up to Walker. (Def. Post-Trial Brief at 21). Moreover, the nutritional concern might be mitigated by offering Walker a nutritional supplement, a subject on which the record is silent. *See Cutter*, 544 U.S. at 721 (noting that one state corrections system offered a kosher diet consisting of "a fruit, a vegetable, a granola bar, and a liquid nutritional

16

supplement -- each and every meal")(citation omitted)). The record is short of establishing denial of any daily kosher meal option to Walker is justified by nutritional concerns.

While the burden is on prison officials to demonstrate that a substantial burden on a prisoner's religious exercise serves a compelling governmental interest and is the least restrictive means of furthering that interest, the Supreme Court has instructed that this standard must be applied with due deference to the judgment of prison officials, particularly when prison security is implicated. *Cutter*, 544 U.S. at 722-23, 725 n.13; *see Fowler*, 534 F.3d at 937-39. The denial of Walker's dietary requests has not been based on prison security nor has it been connected to furtherance of any other compelling governmental interest. Rather it is apparent to the Court that prison officials' resistance is the product of a combination of frustration with what they see as dietary demands both shifting and uncompromising, lingering suspicion about Walker's sincerity through the lengthy history of litigation with him now going back some fourteen years (*see* Report and Recommendation [46] at 2-5), and embedded institutional reluctance to accord perceived special treatment to an inmate. All of this is understandable from prison officials' perspective, but Walker has made the case that the exercise of his sincerely-held religious beliefs has been unjustifiably burdened by the prison's refusal to accommodate his religiously-motivated dietary requests. Prison officials must now provide what the law requires.

17

It follows from the foregoing discussion defendants have not met their burden of establishing that the denial of any daily kosher meal option is the least restrictive means of furthering a compelling governmental interest. Walker has established that in this respect prison officials have violated his statutory right to religious exercise under RLUIPA. Consistent with the Eighth Circuit's opinion, the Court should consider appropriate equitable relief.

C.   Relief

As Walker's need for daily kosher meals is indistinguishable from his need for kosher meals on holy days, *see* 298 Fed. Appx. at 537, a supplemental judgment should be entered granting Walker the same kind of declaratory relief as in the original judgment with respect to kosher food on holy days. Though not an issue on remand, the hearing record indicates the declaratory judgment concerning holy day kosher meals has not succeeded and indeed, has a been source of continuing dispute. Unless disputes over Walker's diet are to go on for another fourteen years, specific guidance in the form of a mandatory injunction is in order.[8] Appropriate deference to prison officials requires that they first be given the opportunity to present a workable plan to provide Walker with a daily kosher meal option consisting of the fruits, vegetables, cereals and other kosher

---

[8] Walker has consistently sought injunctive relief with respect to access to kosher food (*See* Complaint [1] at 6-8; Pl. Trial Brief [31] at 7-12).

vegetarian foods of the kind he has requested appropriately handled to avoid contamination. Walker should then have the opportunity to respond to the proposed plan following which the Court would incorporate an approved plan in an injunction.

In proposing a plan defendants need not accede to all of Walker's demands. It is unlikely, for example, that the Court would order defendants to install a microwave in the chapel for the exclusive use of Walker and others pursuing a similar diet. In framing the remand issue the Eighth Circuit spoke in terms of the denial "of *any* daily kosher meal option." In emphasizing "any" the court signaled its concern was with the complete lack of a daily kosher meal option implicitly, to this Court's view, recognizing that prison officials should retain a great deal of flexibility in meeting Walker's religious dietary needs. What is required is a simple, reasonable plan to make available kosher, vegetarian food items to Walker on a daily basis under instruction to kitchen workers to handle the food in a manner to avoid contamination.

**III.**

**RECOMMENDATION**

IT IS RESPECTFULLY RECOMMENDED that the Court find and order as follows:

(1) ISP's denial to Walker of any daily kosher meal option is not the least restrictive means to further a compelling governmental interest;

(2) Walker has established that the failure to provide any daily kosher meal option unjustifiably burdens the exercise of his sincerely-held religious beliefs in violation of his rights under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc-1, *et seq.;*

(3) Defendants should be ordered to within thirty (30) days present a plan to provide Walker with a daily kosher meal option consisting of vegetarian food items of the kind Walker has requested. The plan should include reasonable precautions against contamination of the kosher food by contact with non-kosher food. The Court should further order that following the filing of defendants' proposed plan, Walker will have thirty (30) days to object or respond;

(4) Following review of the proposed plan and Walker's response, the undersigned should be directed to make a further recommendation for a supplemental judgment granting appropriate declaratory and mandatory injunctive relief, the latter of which will incorporate an approved plan to make a daily kosher meal

20

option available to Walker; and

(5)  This Court should retain jurisdiction until a final supplemental judgment is entered.

**ORDER**

IT IS ORDERED that the parties have **August 23, 2010** to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1). Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990); Wade for Robinson v. Callahan, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. See Fed. R. Civ. P. 72; Thompson, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. Thomas v. Arn, 474 U.S. 140, 155 (1985); Griffini v. Mitchell, 31 F.3d 690, 692 (8th Cir. 1994); Halpin v. Shalala, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); Thompson, 897 F.2d at 357.

IT IS SO ORDERED.

Dated this 2d day of August, 2010.

ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE